## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| FREDRICK LEE WALKER, a pre-trial detainee at the Cook County Jail, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| COUNTY OF COOK, ILLINOIS, a local public entity under the laws of the State of Illinois; | ) ) ) ) | Case No.: 05 C 5634 Judge Ronald Guzman |
| and | ) ) | |
| MICHAEL SHEAHAN, Sheriff of Cook County; | ) ) ) | |
| and | ) ) | |
| WILLIAM ALEXANDER; JOHN BAILEY; MICHAEL BARTON; JOSHUA BERTELS; JEFFERY BLACK; S. BROWN; JOEL MARIE COLLINS; LUIS CRUZ; MICHAEL DEMBOSZ; JAMES M. DUFFY; TYRONE EVERHART, SR.; CHARLIE GARNER; VINCENT E. GARRETT; OLLIE GAVIN; PETER GIUNTA; CLIFFORD HARMON; WILLIAM KAMPIC; LARRY KOWALUK; GEORGE MEADOWS; MICHAEL S. MILLER; CHRISTOPHER MOORE; JOSHUA NORRIS; PARIS PATTERSON; JAVIER RUEDA, JR.; FRANK SAVALA, JR.; DAVID STEADMAN; ELLIOT TAYLOR, JR.; and DOES 1 THROUGH 100, each an individual, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL REQUESTED** |
| Defendants. | ) ) ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Fredrick Lee Walker, on behalf of himself and all others similarly situated, complains[1] against defendants as follows:

## NATURE OF THE CASE

1. On September 8, 2004, plaintiff Fredrick Walker's cell door at the Cook County Jail electronically opened, and a voice over a loudspeaker ordered Walker to step out. Although he was initially hesitant -- because this was not ordinary procedure -- Walker obeyed the command. Waiting for him just outside was an ambush. No less than six Cook County Jail guards immediately began to strike, punch and kick him. During the attack, the guards verbally assaulted Walker, and three of the guards threatened to kill him. Several other guards stood by, watching, and did nothing to stop the beating. After it was over, Walker had to be hospitalized, having suffered serious injuries to his face and body.

2. Unfortunately, what happened on September 8, 2004 was anything but an isolated occurrence. During the five years he has spent awaiting trial at the Cook County Jail, plaintiff Walker has been physically attacked repeatedly, both by guards and by other inmates who the Jail guards have pitted against him. He has witnessed numerous attacks against other detainees who, like him, have managed to get on the wrong side of jail guards. He has filed grievance after grievance, with no results, except to engender further wrath from guards, who administer further beatings in retaliation.

3. Unfortunately, plaintiff Walker's experience is all too typical. Plaintiff, like countless other detainees at the Cook County Jail, has been subjected to a long-standing and

---

[1] On November 29, 2005, the Court dismissed Plaintiff's initial Complaint with leave for appointed counsel to file an amended complaint within 60 days. On January 26, 2005, the Court extended the time to file until February 13, 2006. This First Amended Complaint is filed by appointed counsel pursuant to those orders.

deeply entrenched culture that condones and encourages the use of excessive force against detainees. Frequently, guards use excessive force solely to punish, harass, and retaliate against detainees without legitimate purpose.

4.     The Cook County Sheriff's Office, which operates the Jail and is responsible for maintaining the safety of detainees, is aware that widespread use of excessive force occurs but does little to prevent it, effectively acquiescing in the practice. Policies to prevent the use of excessive force are inadequate and inadequately enforced; excessive force incidents are not thoroughly investigated, and guards responsible are rarely punished. These failures on the part of the Sheriff's Office, together with a pervasive "code of silence" among prison guards and officials, ensure that guards can use excessive force with impunity.

5.     The widespread and entrenched use of excessive force at the Cook County Jail violates the Constitutional rights of plaintiff and the other detainees of the Cook County Jail, who live in constant peril of being attacked by the very guards who are supposed to protect them. This is a civil rights action plaintiff Walker has filed on behalf of himself and all present and future detainees of the Cook County Jail. In this class action lawsuit, plaintiff seeks compensation for the severe physical and emotional injuries he has received while incarcerated at the Cook County Jail. He also seeks, both on his own behalf and on behalf of the class he seeks to represent, injunctive relief to force Cook County and the Cook County Sheriff's Office to put a stop to the routine use of unlawful and excessive force at the Cook County Jail.

## JURISDICTION AND VENUE

6.     Plaintiff's civil rights were violated by defendants' actions while he was incarcerated at the Cook County Jail ("CCJ"). This Court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and 42 U.S.C. § 1983.

7.     The claims of the class arise under 42 U.S.C. § 1983.  This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3-4).  Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202, and injunctive relief and damages are authorized pursuant to 42 U.S.C. § 1983.

8.     The incidents that form the basis of this Complaint took place in Cook County, Illinois.  Venue is thus proper under 28 U.S.C. § 1391.

## PARTIES

9.     Plaintiff Fredrick Lee Walker is a detainee under the control of the Cook County Department of Corrections ("CCDOC"), a department of the Cook County Sheriff's Office.  At all times relevant to his claims in this Complaint, Walker resided at the CCJ, a jail facility located in Chicago, Illinois.

10.    The members of the class are persons who are currently, or will be in the future, incarcerated in the CCJ in Chicago, Illinois, under the custody of the CCDOC.

11.    Defendant County of Cook ("Cook County") is a local public entity under the laws of the State of Illinois.  Cook County, through the Cook County Sheriff's Office, runs the CCJ and has a legal responsibility to ensure that the CCJ is operated in compliance with the United States Constitution.  Cook County is also the employer of the Individual Defendants (defined below).

12.    Defendant Michael Sheahan is employed as the Sheriff of Cook County, Illinois. In his capacity as Sheriff, defendant Sheahan is responsible for the operation of the CCDOC and the CCJ, including hiring, training and supervising correctional officers and maintaining the safety of detainees.  Defendant Sheahan is sued in his official and personal capacities.

13.    Defendant William Alexander was at all times relevant employed by CCJ as a correctional officer.  Defendant Alexander is sued in his official and personal capacities.

4

14.     Defendant John Bailey was at all times relevant employed by CCJ as a correctional officer.  Defendant Bailey is sued in his official and personal capacities.

15.     Defendant Michael Barton was at all times relevant employed by CCJ as a correctional sergeant.  Defendant Barton is sued in his official and personal capacities.

16.     Defendant Joshua Bertels was at all times relevant employed by CCJ as a correctional officer.  Defendant Bertels is sued in his official and personal capacities.

17.     Defendant Jeffery Black, was at all times relevant employed by CCJ as a correctional officer.  Defendant Black is sued in his official and personal capacities.

18.     Defendant S. Brown, Star Number 3726, was at all times relevant employed by CCJ as a correctional officer.  Defendant Brown is sued in his official and personal capacities.

19.     Defendant Joel Marie Collins was at all times relevant employed by CCJ as a correctional officer.  Defendant Collins is sued in his official and personal capacities.

20.     Defendant Luis Cruz was at all times relevant employed by CCJ as a correctional officer.  Defendant Cruz is sued in his official and personal capacities.

21.     Defendant Michael Dembosz was at all times relevant employed by CCJ as a correctional captain.  Defendant Dembosz is sued in his official and personal capacities.

22.     Defendant James M. Duffy was at all times relevant employed by the County of Cook as a county police officer.  Defendant Duffy is sued in his official and personal capacities.

23.     Defendant Tyrone Everhart, Sr. was at all times relevant employed by CCJ as a correctional captain.  Defendant Everhart is sued in his official and personal capacities.

24.     Defendant Charlie Garner was at all times relevant employed by CCJ as a correctional officer.  Defendant Garner is sued in his official and personal capacities.

25.     Defendant Vincent E. Garrett was at all times relevant employed by CCJ as a correctional officer.  Defendant Garrett is sued in his official and personal capacities.

26.     Defendant Ollie Gavin was at all times relevant employed by CCJ as a correctional officer.  Defendant Gavin is sued in his official and personal capacities.

27.     Defendant Peter Giunta was at all times relevant employed by CCJ as a correctional officer.  Defendant Giunta is sued in his official and personal capacities.

28.     Defendant Clifford Harmon was at all times relevant employed by CCJ as a correctional officer.  Defendant Harmon is sued in his official and personal capacities.

29.     Defendant William Kampic was at all times relevant employed by CCJ as a correctional officer.  Defendant Kampic is sued in his official and personal capacities.

30.     Defendant Larry Kowaluk was at all times relevant employed by CCJ as a correctional officer.  Defendant Kowaluk is sued in his official and personal capacities.

31.     Defendant George Meadows was at all times relevant employed by CCJ as a correctional officer.  Defendant Meadows is sued in his official and personal capacities.

32.     Defendant Michael S. Miller was at all times relevant employed by CCJ as a correctional captain.  Defendant Miller is sued in his official and personal capacities.

33.     Defendant Christopher Moore was at all times relevant employed by CCJ as a correctional officer.  Defendant Moore is sued in his official and personal capacities.

34.     Defendant Joshua Norris was at all times relevant employed by CCJ as a correctional officer.  Defendant Norris is sued in his official and personal capacities.

35.     Defendant Paris Patterson was at all times relevant employed by CCJ as a correctional officer.  Defendant Patterson is sued in his official and personal capacities.

36.     Defendant Javier Rueda, Jr. was at all times relevant employed by CCJ as a correctional officer.  Defendant Rueda is sued in his official and personal capacities.

37.     Defendant Frank Savala, Jr. was at all times relevant employed by CCJ as a correctional sergeant.  Defendant Savala is sued in his official and personal capacities.

38.     Defendant David Steadman was at all times relevant employed by CCJ as a correctional officer.  Defendant Steadman is sued in his official and personal capacities.

39.     Defendant Elliot Taylor, Jr. was at all times relevant employed by CCJ as a correctional sergeant.  Defendant Taylor is sued in his official and personal capacities.

40.     Defendant Does 1 through 100 were at all times relevant employees of the Sheriff's Office and/or Cook County.  Does 1 through 50 were involved in incidents in which excessive force was used on plaintiff Walker and/or responsible for adopting, implementing or enforcing the rules and procedures of the CCJ.  Does 51 through 100 were responsible for ensuring that adequate medical care was provided to plaintiff Walker.  The names of Does 1 through 100 are not now known by plaintiff.

41.     Defendants Alexander, Bailey, Barton, Bertels, Black, Brown, Collins, Cruz, Dembosz, Duffy, Everhart, Garner, Garrett, Gavin, Giunta, Harmon, Kampic, Kowaluk, Meadows, Miller, Moore, Norris, Patterson, Rueda, Savala, Steadman, Taylor, and Does 1 through 100 are referred to collectively as the "Individual Defendants."  At all times relevant, the Individual Defendants were acting under color of law.

## **THE CLASS**

42.     Plaintiff brings this class action suit pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of all persons who are currently, or will in the future be, detained at the CCJ, a jail facility operated by the Office of the Cook County Sheriff.

43. This action is properly maintainable as a class action under the provisions of Fed. R. Civ. P. 23(a) and 23(b)(2).

A. The class consists of all persons who are currently, or who will be, incarcerated at the CCJ.

B. The members of the class are so numerous that it is impracticable to bring them all before the Court. The average daily population at the CCJ is in excess of 9,000 detainees. Many additional detainees are expected to be incarcerated in the future and cannot yet be identified.

C. The named plaintiff will adequately protect the interests of the class. Plaintiff has no interests adverse to or in conflict with the class members.

D. Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate declaratory and injunctive relief with respect to the class as a whole.

E. The named plaintiff is a member of the class. His claims are typical of the claims of the members of the class and his interests are identical to those of the class.

F. The claims of the class involve common questions of law and fact. The common questions of law and fact include:

(a) Whether defendants have violated, are violating, and, unless enjoined, will continue to violate, 42 U.S.C. § 1983 by denying class members' rights under the Fourteenth Amendment of the United States Constitution.

(b) Whether defendants have used, are using, and, unless enjoined, will continue to use, unlawful excessive force against class members as a result of and as a condition of their confinement at the CCJ.

8

(c)     Whether defendants have failed, are failing, and, unless enjoined, will continue to fail to intervene to prevent use of excessive force against class members.

(d)     Whether defendants have denied, are denying, and, unless enjoined, will continue to deny, safe living conditions to class members.

(e)     Whether defendants have denied, are denying, and, unless enjoined, will continue to deny, class members adequate grievance procedures and disciplinary proceedings.

## FACTUAL BACKGROUND

44.     The CCJ is a jail facility operated by the CCDOC. CCDOC is a department within the Cook County Sheriff's Office, directed by the Cook County Sheriff, defendant Sheahan. The Cook County Sheriff's Office oversees the operation of the CCDOC as well as development and implementation of policies within the CCDOC.

45.     The CCJ is the largest single-site pre-detention facility in the United States. The facility consists of eleven separate "Divisions," which are located along California Avenue, south of 26th Street, in Chicago, Illinois.

46.     The CCJ averages a daily population of more than 9,000 detainees and 3,000 correctional officers and staff. The CCJ primarily houses pre-trial detainees who have not yet been convicted of their alleged crimes in the criminal courts.

### Widespread Use of Excessive Force in the Cook County Jail

47.     Use of excessive force by CCDOC guards against detainees is widespread throughout the CCJ system and has become an entrenched and accepted part of the culture of the CCDOC. Guards frequently administer beatings to detainees, not for any legitimate purpose, but

9

simply to punish them or to retaliate for detainees' complaints. Inmates who get on the "wrong side" of guards may be subject to repeated beatings, many of which result in severe injuries.

48. The guards who administer these beatings are rarely disciplined for their conduct, or even investigated. It is common knowledge that CCJ guards can use excessive force on detainees with impunity, counting on a "code of silence" within the CCDOC to ensure that their misconduct never sees light of day.

49. Within the past several years, the details of several especially egregious incidents have leaked out of the CCJ and received widespread publicity. For instance on February 24, 1999, 40 members of the CCDOC's Special Operations Response Team ("SORT"), accompanied by four guard dogs without muzzles, administered severe beatings to nearly fifty detainees in response to a gang-related stabbing three days earlier. A number of these detainees had to be hospitalized with serious injuries as a result.

50. However, despite the large number of inmates involved, the 1999 SORT Team incident did not come to light until the *Chicago Tribune* initiated an investigation in 2003, four years after the incident occurred.

51. Ultimately, there was a grand jury investigation of the incident. The grand jury concluded: "the Grand Jury holds no serious doubt that the clout-heavy Richard Remus and the SORT Team he led engaged in gross, if not criminal, misconduct on February 24, 1999." However, there were no prosecutions because the four-year cover-up caused the statute of limitations to expire.

52. Even after the investigation revealed misconduct, most of the individuals against whom charges were sustained in the 1999 SORT incident were eventually promoted. The Sheriff's Office along with the CCDOC participated in a conspiracy to cover-up the incident as

10

well as obstructing justice by halting the investigation until the statute of limitations expired on claims against the officers involved.

53.     The fact that an incident of this magnitude remained covered up for so long is a testament to the power and pervasiveness of the code of silence in the CCJ. Guards falsified incident reports. Jail paramedics refused to treat injured detainees, failed to file reports, and refused to participate in the investigation. The Sheriff's Office halted an investigation targeting the incident. Witnesses to the incident did not come forward. And detainee complaints were ignored. The code of silence was effective for several years in this case, reinforcing the prevalent belief among guards at the CCJ that administering corporal punishment is condoned, appropriate and will not lead to discipline.

54.     This and other widely publicized incidents demonstrate the degree to which the CCJ culture condones excessive force. But they are far from the only incidents in which excessive force has been used. To the contrary, beatings and excessive force are routine practice within the CCJ. Indeed, between 1998 and 2003, CCDOC officers were named in 783 excessive force complaints by detainees.

55.     CCJ guards routinely use force to punish and harass detainees and to retaliate against detainees for engaging in constitutionally protected conduct, such as filing grievances regarding attacks by guards. Other detainees are well aware of the use of excessive force within the CCJ. Consequently, the use of excessive force also serves to deter other detainees from complaining, filing lawsuits and engaging in other protected conduct.

56.     Many inmates, such as plaintiff Walker, have been attacked repeatedly over the course of their incarceration. In some cases, guards arrange for other detainees, often from rival gangs, to attack targeted detainees for them.

11

57.     As a result of the routine use of excessive force within the CCJ, detainees are in constant danger of being injured by excessive force, administered or directed by the very guards that are supposed to be protecting their safety.  They are forced to defend themselves, knowing they cannot count on CCDOC personnel to protect them.  Their grievances and complaints are typically rejected, and may even lead to further retaliatory attacks.  Frequently, guards, to cover their own misconduct, make false charges that detainees provoked the use of force by assaulting guards.

**Excessive Force Incidents Involving Plaintiff Fredrick Walker**

58.     On or about June 26, 2000, plaintiff Walker was processed as a detainee at the CCJ.  Plaintiff Walker has been in the custody of the CCDOC since that date, while awaiting trial in a matter unrelated to this action.  Plaintiff Walker has been incarcerated within several Divisions of the CCJ, including Divisions 1, 5, 10, and 11.

59.     During his incarceration at the CCJ, plaintiff Walker has been subjected to excessive and unlawful use of force on numerous occasions, the most serious of which are described below.  On many of these occasions, CCDOC officers used force as a form of punishment.  On information and belief, many of these attacks were also motivated by guards' desire to retaliate against Walker for complaints and grievances Walker submitted or attempted to submit.

60.     Plaintiff Walker has sustained severe injuries as a result of these attacks.

- *February 9, 2003 Incident*

61.     On or about February 9, 2003, correctional officer Bailey threatened to cause physical harm to plaintiff Walker and approached him to do so.  Bailey and corrections officer Williams each pulled out metal objects as weapons and attempted to attack plaintiff Walker but retreated after a brief physical attack.

12

62.     Bailey and Williams later returned to the tier where plaintiff Walker was housed with numerous other officers, carrying various weapons, who then joined in physically attacking plaintiff Walker.  At least one Captain and several other officers looked on.

63.     After the attack, plaintiff Walker was taken to the Dispensary and then referred to Cermak Hospital for treatment of his injuries.

- ***February 21, 2003 Incident***

64.     On or about February 21, 2003, correctional officers Bailey, Moore, Everhart, Collins, Gavin and others entered plaintiff Walker's cell and physically attacked him.

65.     After the attack, plaintiff Walker was taken to the Dispensary and then to St. Anthony's Hospital to be treated for injuries to his face and body.

66.     Corrections officer Gavin accompanied plaintiff Walker on his visit to St. Anthony's Hospital, where Gavin threatened that he was going to have plaintiff Walker killed.

- ***November 24, 2003 Incident***

67.     On or about November 24, 2003, defendants Bertels, Rueda and Kowaluk approached plaintiff Walker's cell and advised him that they were taking him for a psychological evaluation.  When plaintiff Walker's cell door opened, these Individual Defendants physically attacked him.

68.     After the attack, defendants Kowaluk and Barton told plaintiff Walker that no officers would take the blame for the attack and that when plaintiff Walker returned from his psychological evaluation, he would have to explain how a burned bed sheet got in front of his cell.

69.     Although plaintiff Walker did not set the fire that defendants Kowaluk and Barton alluded to, guards accused plaintiff Walker of setting the fire.  Plaintiff Walker was later criminally charged for aggravated arson.

- ***January 11, 2004 Incident***

70.     On or about January 11, 2004, plaintiff Walker was taken to a psychological evaluation.  While bringing plaintiff Walker back to his cell, defendant Giunta shouted that plaintiff Walker had expressed an intent to start a fire.

71.     After Walker was locked in his cell, another detainee started a fire with a piece of bedding and pushed it in front of plaintiff Walker's cell.

72.     Captain Dembosz evacuated all inmates from the tier, except plaintiff Walker. Defendant Giunta and multiple other guards then removed plaintiff Walker from his cell and physically attacked him.

73.     Plaintiff Walker was taken to Cermak Hospital.  Rather than receiving medical treatment for the injuries to his arm, head and back, however, plaintiff Walker was forcibly restrained to a gurney for over twelve hours.

- ***January 14, 2004***

74.     On or about January 14, 2004, Walker was physically attacked and assaulted in his cell by multiple guards, including defendants Cruz, Duffy, Harmon and Norris.

75.     Defendant Savala was present during the attack, but made no effort to intervene on plaintiff Walker's behalf.

76.     As a result of the physical attack, Plaintiff Walker was taken to Cermak Hospital, where he was treated and had to undergo x-rays examinations of his wrists.

- ***September 8, 2004 Incident***

77.     On or about September 8, 2004, the door to plaintiff Walker's cell was electronically opened and he was told to step out.  Plaintiff Walker was hesitant to do so, as this was not the normal procedure for a detainee to leave his cell.

14

78.     Upon exiting his cell, plaintiff Walker was physically attacked and assaulted by multiple guards, including defendants Kampic, Garner, Bailey, Meadows, Black and Garrett. During the attack, defendants Kampic, Garner and Bailey threatened to kill plaintiff Walker.

79.     Several correctional officers witnessed the attack; however, no correctional officers made any effort to intervene on plaintiff Walker's behalf.

80.     Plaintiff Walker was treated at Cermak Hospital.  As a result of the physical attack, plaintiff Walker suffered serious injuries to his face and body.  Plaintiff Walker received stitches to his eye.

81.     For several days following the attack, several of the Individual Defendants who were involved continued to harass plaintiff Walker.

82.     In addition, on or about September 9, 2004, defendant Garner entered plaintiff Walker's cell, confiscated and disposed of personal effects belonging to plaintiff Walker, including his notes regarding incidents at the CCJ, legal materials, and various personal items.

- ***October 6, 2004 Incident***

83.     On or about October 6, 2004, plaintiff Walker was removed from his cell, taken outdoors, and asked to strip.

84.     Defendants Taylor, Miller, Brown, Black, Garner, Alexander, Patterson, Miller, and others then physically attacked plaintiff Walker and/or failed to intervene while plaintiff Walker was attacked.

85.     As a result of the physical attack, plaintiff Walker was taken to Cermak Hospital and found to have suffered a blunt trauma to his head, face and chest, and a fracture to his face.

- ***Ongoing Threats***

86.     Plaintiff Walker has been the victim of a number of other uses of excessive force in addition to the incidents described above.

15

87.     Walker has also been the target of several incidents in which, on information and belief, correctional officers incited other detainees to attack him.  In addition to instigating the attacks, correctional officers stood by and allowed the attacks to occur.

88.     In some cases, other detainees have sprayed feces or urine onto plaintiff Walker or into his cell, in an effort to harass plaintiff Walker or incite altercations.  On information and belief, guards directed or condoned this activity.

89.     Plaintiff Walker has been the victim of unlawful "shakedowns," in which confidential legal material in his cell was confiscated and, on information and belief, reviewed by CCDOC personnel.

90.     Plaintiff Walker has been, and continues to be, harassed, retaliated against and unfairly sanctioned for filing and pursuing grievances and complaints against the defendants.

- ***Preventing Access to Medical Care***

91.     CCDOC personnel have also blocked plaintiff Walker's access to adequate medical care, including in some cases medical care for injuries resulting from excessive force incidents.  On information and belief, CCDOC personnel have declined Walker's requests for medical care as punishment, in retaliation for complaints, and/or to cover up the attacks to which Walker has been subject.

92.     On November 15, 2005, Judge Henry Simmons (Circuit Court of Cook County, Illinois, Criminal Division) ordered that plaintiff Walker was entitled to a medical examination with particular testing and directed defendant CCDOC to transport plaintiff Walker for the testing.  Plaintiff Walker never received the medical examination ordered by the Court.

93.     On January 5, 2006, Judge Simmons issued a "Second Court Order" entitling plaintiff Walker to the previously ordered examination.  In this order, Defendant CCDOC was

directed to transport plaintiff Walker to Stroger Hospital for testing "as soon as possible." Again, Walker never received the medical examinations ordered by the Court.

- ***Ineffectiveness of Grievances***

94.     Plaintiff Walker prepared and submitted Detainee Grievance Forms and sought to exhaust his administrative remedies in connection with the attacks, unlawful shakedowns and retaliation he suffered.  His grievances were routinely rejected.

95.     In some cases, plaintiff Walker completed Detainee Grievance Forms and/or took other steps to utilize the administrative remedies available to him, but his grievance forms were willfully and maliciously confiscated, destroyed and/or otherwise refused by correctional officers and other CCJ staff.

96.     On information and belief, no CCDOC personnel were ever sanctioned or disciplined as a result of any of the attacks on Walker or other conduct described above.

**The Code of Silence**

97.     The CCJ operates under a pervasive and long-standing "code of silence," which effectively forbids officers from reporting other officers' misconduct.  The code of silence is known and sanctioned by officials at the highest levels within the Sheriff's Office.

98.     Employees who fail to abide by the code of silence face ostracism by their superiors and peers, negative repercussions to their employment, harassment, and even threats to their safety.  As a result, very few CCDOC employees are willing to come forward to report excessive use of force and other misconduct by their co-workers.

99.     The code of silence flourishes at the CCJ because of the Sheriff's Office's failure to enforce its own mechanisms to control the excessive use of force, conduct adequate investigations into allegations of excessive force, and discipline those who engage in the use of excessive force.

100.    Likewise, by allowing employees to use excessive force with impunity, the code of silence encourages and regularizes it, causing the use of excessive force to become further engrained in the CCDOC culture.

### Trumped-Up Prisoner Assault Charges

101.    In addition to fostering a code of silence, the CCDOC culture encourages personnel who are involved in excessive force incidents to cover up their activities.

102.    For instance, in order to mask excessive force incidents, CCDOC personnel falsely report that force was used in response to assaults or threats of physical harm by detainees.

103.    In some instances, detainees have been severely beaten while shackled and cuffed, or while laying passively on the floor.  In other instances, detainees have been beaten by overwhelming numbers of guards.  Although there could not possibly have been a threat of physical harm to corrections officers in these circumstances, CCDOC officials have nevertheless reported that the attacks occurred as a result of assaults or threats of physical harm.

104.    These false reports have resulted in discipline or even criminal charges against detainees.  They have also thwarted appropriate investigations and discipline, further perpetuating a culture within the CCDOC that is tolerant of unlawful corporal punishment and excessive force.

### Retaliatory Beatings and Shakedowns

105.    On information and belief, CCDOC personnel frequently use excessive force as a means of retaliation against detainees who complain, file grievances, attempt to litigate claims against the Sheriff's Office, or engage in other constitutionally protected activities.

106.    In addition to further beatings, these detainees are subject to shakedowns and cell searches in which their legal papers are examined and even confiscated.

107.    Detainees at the CCJ are aware that they may be retaliated against if they attempt to complain about excessive force or other misconduct.  This creates an atmosphere of fear and intimidation that chills complaints and further enhances guards' sense of invulnerability to investigation and discipline.

**Failure of Existing Policies and Procedures to Prevent Constitutional Violations**

108.    Operations of the CCJ are governed by a series of "General Orders," which purport to limit the use of force and provide for investigation and discipline.  However, the policies embodied in the General Orders are not adequate, and the Sheriff's Office does not adequately enforce them.  As a result, the pattern and practice of using excessive force, often for purposes of corporal punishment, continues unchecked within the CCJ.

109.    For instance, General Order No. 9.16 purports to set forth the Sheriff's Office's policies and procedures for the use of force, including the appropriate degree of force.  Yet, CCDOC personnel routinely use force in excess of the force permitted under the policy.

110.    CCDOC personnel have deliberately violated this General Order by using force when it was unnecessary, relying on the code of silence and the acquiescence of their superiors to protect them from any repercussions.  In some cases, CCDOC personnel are unclear on the appropriate use of force in response to situations because they have not received adequate training.

111.    Included in General Order No. 9.16 are the Sheriff's Office's policies and procedures for filing reports in connection with force incidents.  As of 2002, this Order no longer requires personnel who witness force incidents to file reports unless they were actually involved. The result is that investigations into excessive force incidents, to the extent they occur, may be based on incomplete information.

112.    Furthermore, although truthful and complete reporting is critical to the success of a use of force policy, CCDOC personnel routinely file insufficiently detailed or conclusory reports, fail to file reports at all, or file false reports. The Sheriff's Office's failure to enforce the reporting policy adequately, through proper training, supervision, and investigation, contributes to an institutional environment that condones excessive force.

113.    General Order 14.5 purports to permit detainees to file "grievances" for violations of civil, constitutional or statutory rights; alleged criminal or prohibited acts by staff members; concerns about unsafe living conditions; issues relating to medical needs; and alleged violations of policies regarding detainees' general welfare or safety. Under this General Order, CCDOC personnel are supposed to be subject to disciplinary action for knowingly denying detainees their rights to file grievances.

114.    But in practice, the grievance process is wholly insufficient, and General Order 14.5 is routinely violated. The processing time for inmate grievances is too long; detainees have no faith in the system and feel that their grievances are ignored; guards and other CCDOC personnel are rarely disciplined as a result of detainee grievances; detainees are retaliated against for filing grievances; and CCDOC personnel in some instances simply do not allow detainees to file grievances, rip them up or throw them away.

115.    The Sheriff's Office also routinely fails to do complete and proper investigations of use of force incidents. General Order 4.1 purports to be the Sheriff's Office's policy regarding investigations. However, General Order 4.1 is inadequate, among other reasons, because it fails to include any guidance or criteria to identify the types of incidents that automatically require an investigation. As a result, many incidents that should be investigated are overlooked.

116.    When done, investigations frequently fail to: identify all participants and witnesses involved in incidents; require written reports from all participants and witnesses; interview participants and witnesses; and compare documented medical evidence of injuries sustained to the force reported. The Sheriff's Office's failure to investigate force incidents adequately effectively conceals incidents in which personnel used excessive or unnecessary force, further encouraging the a culture that accepts and fosters misconduct.

117.    The Sheriff's Office has established an unreasonably high burden of proof to maintain an excessive force charge against a corrections officer. Under the Sheriff's Office's standard, no amount of circumstantial evidence that excessive force was used is sufficient to sustain a charge against the officer. If an officer denies using excessive force, the investigation will typically be labeled "Inconclusive," even if medical records corroborate a detainee's excessive force claim. Moreover, a file is classified as Inconclusive if a detainee cannot correctly and absolutely identify his assailant, even when the evidence clearly shows that one of a number of correctional officers attacked him.

118.    The Sheriff's Office also lacks an adequate system to monitor the use of force at the CCJ. Although General Order 4.1 requires complaints of excessive force to be reported "directly to the Sheriff," the Sheriff's Office has failed to implement a system under which it receives standard or periodic reports related to the use of force. Although the Sheriff's Office is on notice of the routine use of excessive force, upon information and belief, it collects no data regarding use of force at the Jail, unlike comparable jail systems in the United States.

119.    The Sheriff's Office routinely fails to impose meaningful disciplinary sanctions for violations of the Use of Force General Order, No. 9.16. The effect of this failure is to

conceal incidents in which there is evidence of excessive force and further encourage the use of excessive force in the future.

120.    Through inquiries to his office from the U.S. Justice Department and the Federal Bureau of Investigation, the report of the grand jury, and numerous news accounts of claims of excessive force at CCJ over the past several years, defendant Sheahan is on notice that the use of excessive force is a rampant problem at CCJ.  Nevertheless, far from halting the practice, he has participated in promoting it through the policies described above.

121.    Further, the few steps he has taken publicly to address the issue have been illusory.  For example, in 2003, in response to press accounts of egregious instances of the use of excessive force at CCJ, Sheahan announced the formation of a "panel of respected experts" to explore excessive force with "full authority to root it out."  This panel never held a public meeting or issued a report.

122.    As a result of the Sheriff's Office's failure to implement and enforce adequate policies to protect detainees and implicit encouragement of the use of excessive force, present and future detainees within the CCJ system are in imminent peril of being subjected to injuries due to the use of excessive force.

## CLASS CLAIMS

### COUNT I
### Section 1983 Claim For Imminent Threat Of Excessive Use of Force

123.    Plaintiff realleges and incorporates by reference Paragraphs 1-122 of the First Amended Complaint.

124.    CCDOC personnel frequently use levels of force against CCJ detainees that are unnecessary, excessive, and in violation of detainees' rights under the Fourteenth Amendment.

22

125.    In addition, on information and belief, CCDOC personnel instigate attacks by CJC detainees against other CJC detainees as a means of punishment or retaliation.  This also constitutes an excessive use of force in violation of detainees' rights under the Fourteenth Amendment.

126.    Detainees within the CCJ have suffered and continue to suffer significant injuries as a result of the ongoing use of excessive force (including the instigation of attacks by other detainees).

127.    Cook County and Sheriff's Office policymakers and officials have systematically failed to train, monitor, supervise, investigate and discipline CCDOC personnel sufficiently to prevent the unlawful use of excessive force that has occurred and continues to occur at the CCJ. In addition, Sheriff's Office policies relating to excessive force are inadequate to prevent the use of excessive force and are not adequately enforced.

128.    The frequent use of excessive force by CCDOC personnel within the CCJ is a result of the Sheriff's Office's and Cook County's systematic failure to train, monitor, supervise, investigate and discipline CCDOC personnel, inadequate policies, and systematic failures to enforce those policies.

129.    The persistent and widespread use of excessive force by CCDOC personnel constitutes a custom and practice, of which defendants Cook County and Sheahan have actual and constructive notice.

130.    Defendants Cook County and Sheahan have been deliberately indifferent in failing to remedy the problem.  Through their indifference and failure to act, defendants Cook County and Sheahan have condoned and encouraged the continued use of excessive force in the CCJ.

131.    Detainees at the CCJ face a significant and imminent threat of sustaining future injuries due to the continued unlawful use of excessive force by CCDOC personnel.

132.    Because they are or will be incarcerated in the CCJ, members of the class cannot avoid the threat of future injury.

133.    The injunctive relief sought herein will likely eliminate or substantially reduce the imminent threat of future injuries to detainees at CCJ and would therefore benefit the entire class.

134.    Detainees at CCJ and defendants have an ongoing and actual controversy that is likely to be redressed by Court action.

135.    If injunctive relief is not granted, members of the class will suffer irreparable injuries for which there is no adequate remedy at law.

**COUNT II**
**Section 1983 Claim For Failure to Protect**

136.    Plaintiff realleges and incorporates by reference Paragraphs 1-135 of the First Amended Complaint.

137.    CCDOC personnel routinely fail to intervene to prevent or mitigate the injuries resulting from attacks by other guards and attacks by detainees instigated by other guards.

138.    CCDOC personnel have shown deliberate indifference to the safety of CCJ detainees.  Their acts and failures to act have harmed members of the class and violate class members' rights under the Fourteenth Amendment.

139.    Cook County and Sheriff's Office policymakers and officials have systematically failed to train, monitor, supervise, investigate and discipline CCDOC personnel sufficiently to prevent their unlawful failure to intervene and protect.

140.     The persistent and widespread failure to intervene by CCDOC personnel constitutes a custom and practice, of which defendants Cook County and Sheahan have actual and constructive notice.  Defendants Cook County and Sheahan have been deliberately indifferent in failing to remedy the problem.

141.     Detainees at the CCJ face a significant and imminent risk of sustaining future injuries due to the continued unlawful failure to intervene in attacks, in violation of detainees' rights under the Fourteenth Amendment.

142.     Because they are or will be incarcerated in the CCJ, members of the class cannot avoid the threat of future injury.

143.     The injunctive relief sought herein will likely eliminate or substantially reduce the imminent threat of future injuries to detainees at the CCJ and would therefore benefit the entire class.

144.     Detainees at the CCJ and defendants have an ongoing and actual controversy that is likely to be redressed by Court action.

145.     If injunctive relief is not granted, members of the class will suffer irreparable injuries for which there is no adequate remedy at law.

**COUNT III**
**Section 1983 Claim for Retaliation**

146.     Plaintiff realleges and incorporates by reference Paragraphs 1-145 of the First Amended Complaint.

147.     CCDOC personnel physically attack detainees and, on information and belief, instigate attacks on detainees by other detainees in retaliation for making complaints, filing grievances regarding previous attacks, pursuing litigation, and otherwise engaging in constitutionally protected activities.  These attacks are meant not only to punish the detainees

25

who complained, but also to intimidate other detainees and to deter them from filing grievances or otherwise pursuing their legal rights.

148.     The threat of retaliatory attacks is sufficient to chill a person of ordinary firmness from engaging in his or her constitutionally protected rights.

149.     Under the First and Fourteenth Amendments, members of the class have a right to seek legal redress of grievances, including grievances concerning the use of excessive force.  By seeking to prevent detainees from seeking legal redress and engaging in other protected activities, CCDOC personnel have violated their constitutionally protected rights.

150.     Cook County and Sheriff's Office policymakers and officials have systematically failed to train, monitor, supervise, investigate and discipline CCDOC personnel sufficiently to prevent the use of excessive force as a means of retaliation and as a deterrent.  In addition, Sheriff's Office policies relating to excessive force are inadequate to prevent retaliation and are not adequately enforced.

151.     The persistent and widespread use of excessive force for purposes of retaliation and deterrence constitutes a custom and practice, of which defendants Cook County and Sheahan have actual and constructive notice.  Defendants Cook County and Sheahan have been deliberately indifferent in failing to remedy the problem.

152.     Detainees at the CCJ face a significant threat of retaliation in the event that they engage in constitutionally protected activities, including filing grievances for previous attacks, making complaints, and otherwise pursuing legal redress for the use of excessive force.

153.     Because they are or will be incarcerated in the CCJ, members of the class cannot avoid the threat of future injury.

154.     The injunctive relief sought herein will likely eliminate or substantially reduce the imminent risk of future injuries to detainees at CCJ and would therefore benefit the entire class.

155.     Detainees at CCJ and defendants have an ongoing and actual controversy that is likely to be redressed by Court action.

156.     If injunctive relief is not granted, members of the class will suffer irreparable injuries for which there is no adequate remedy at law.

<u>**PLAINTIFF WALKER'S INDIVIDUAL CLAIMS**</u>

**COUNT IV**
**Section 1983 Claim For Use of Excessive Force**

157.     Plaintiff realleges and incorporates by reference Paragraphs 1-156 of the First Amended Complaint.

158.     The Individual Defendants have used force against plaintiff Walker that was unnecessary, unreasonable, and excessive.  Their conduct violated plaintiff's rights under the Fourteenth Amendment.

159.     In addition, on information and belief, CCDOC personnel have instigated attacks by other detainees against Walker.  On information and belief, these attacks were for the purpose of punishment and/or retaliation.  The attacks violated plaintiff's rights under the Fourteenth Amendment.

160.     The use of excessive force (including by instigating attacks by other detainees) by CCDOC personnel were a result of the Sheriff's Office's and Cook County's systematic failure to train, monitor, supervise, investigate and discipline CCDOC personnel, inadequate policies, and systematic failure to enforce those policies.

161.    The persistent and widespread use of excessive force by CCDOC personnel constitutes a custom and practice, of which defendants Cook County and Sheahan have actual and constructive notice.

162.    Defendants Cook County and Sheahan have been deliberately indifferent in failing to remedy the problem. Through their indifference and failure to act, Cook County and Sheriff's Office policymakers and officials have condoned and encouraged the continued use of excessive levels of force in the CCJ.

163.    Defendants' conduct was willful, wanton, malicious and in reckless disregard of plaintiff Walker's rights.

164.    Plaintiff Walker has exhausted his administrative remedies regarding the incidents described herein for which he seeks damages.

165.    Plaintiff Walker has been injured by defendants' use of excessive force and the custom, policy and practice of defendants Cook County and Sheahan of condoning or encouraging the use of excessive force.

**COUNT V**
**Section 1983 Claim For Failure to Protect**

166.    Plaintiff realleges and incorporates by reference Paragraphs 1-165 of the First Amended Complaint.

167.    The Individual Defendants and other CCDOC personnel have failed to intervene to prevent or mitigate plaintiff Walker's injuries resulting from attacks by guards or other detainees.

168.    In failing to intervene or protect plaintiff Walker, the Individual Defendants and other CCDOC personnel were deliberately indifferent to the substantial risk that plaintiff Walker would suffer injuries as a result of the attacks.

28

169.     As a result of the Individual Defendants' and other CCDOC personnel's failure to intervene and protect plaintiff Walker, plaintiff Walker sustained injuries.

170.     The Individual Defendants' and other CCDOC personnel's conduct violated plaintiff Walker's rights under the Fourteenth Amendment.

171.     The unlawful failure to intervene is a result of the Cook County's and the Sheriff's Office's systematic failure to train, monitor, supervise, investigate and discipline CCDOC personnel, inadequate policies, and systematic failures to enforce policies.

172.     The persistent and widespread failure to intervene by CCDOC personnel constitutes a custom and practice, of which defendants Cook County and Sheahan have actual and constructive notice.

173.     Defendants Cook County and Sheahan have been deliberately indifferent in failing to remedy the problem.  Through their indifference and failure to act, defendants Sheahan and Cook County have condoned and encouraged the continued failure to intervene in the CCJ.

174.     Defendants' conduct was willful, wanton, malicious and in reckless disregard of plaintiff Walker's rights.

175.     Plaintiff Walker has exhausted his administrative remedies.

176.     Plaintiff Walker has been injured by the Individual Defendants' use of excessive force and the custom, policy and practice of defendants Cook County and Sheahan condoning or encouraging the use of excessive force.

**COUNT VI**
**Assault**

177.     Plaintiff realleges and incorporates by reference Paragraphs 1-176 of the First Amended Complaint.

178.    In acting in the manner described above, the Individual Defendants intentionally and unlawfully offered to commit corporal injury on plaintiff Walker by force, or force unlawfully directed, under such circumstances as to create a well-founded fear of imminent peril.

179.    The Individual Defendants had the apparent present ability to effectuate the attempt if not prevented.

180.    By the foregoing acts, the Individual Defendants assaulted plaintiff Walker.

181.    The Individual Defendants' conduct was willful, wanton, malicious and in reckless disregard of plaintiff Walker's rights.

182.    Plaintiff Walker has been injured by the Individual Defendants' conduct.

## COUNT VII
## Battery

183.    Plaintiff realleges and incorporates by reference Paragraphs 1-182 of the First Amended Complaint.

184.    In acting in the manner described above, the Individual Defendants willfully touched plaintiff Walker without his consent.

185.    By the foregoing acts, the Individual Defendants battered plaintiff Walker.

186.    The Individual Defendants' conduct was willful, wanton, malicious and in reckless disregard of plaintiff Walker's rights.

187.    Plaintiff Walker has been injured by the Individual Defendants' conduct.

## COUNT VIII
## Intentional Infliction of Emotional Distress

188.    Plaintiff realleges and incorporates by reference Paragraphs 1-187 of the First Amended Complaint.

189.    The Individual Defendants used malicious and excessive force against plaintiff Walker without adequate justification, harassed him, threatened to kill him, unlawfully

30

confiscated his personal papers, denied him adequate medical attention, and deliberately caused him to fear for his physical safety and well-being.

190.     The conduct of the Individual Defendants was extreme and outrageous.  The Individual Defendants either intended to inflict emotional distress on plaintiff when engaging in this conduct, or knew that there was a high probability that their conduct would cause emotional distress.

191.     The Individual Defendants' conduct caused plaintiff to suffer severe emotional distress that no reasonable person could be expected to endure.  As a result, plaintiff has been injured.

192.     The Individual Defendants' conduct was willful, wanton, malicious and in reckless disregard of plaintiff Walker's rights.

### COUNT IX
### Section 1983 Claim for Inadequate Access To Medical Care

193.     Plaintiff realleges and incorporates by reference Paragraphs 1-192 of the First Amended Complaint.

194.     CCDOC and Cook County personnel have deprived plaintiff Walker of access to adequate medical care in violation of his Fourteenth Amendment rights.

195.     CCDOC and Cook County personnel have displayed a deliberate indifference towards the serious medical needs of the plaintiff Walker, proximately causing him to suffer damages.

196.     On information and belief, CCDOC and Cook County personnel have a custom, policy, or practice, of failing to provide adequate medical care to detainees at the CCJ, including plaintiff Walker.  Defendants Cook County and Sheahan, on information and belief, have actual

and constructive notice of this custom, policy, or practice, and have been deliberately indifferent in failing to remedy the problem.

197.    Plaintiff Walker has exhausted his administrative remedies.

198.    Defendants' conduct was willful, wanton, malicious and in reckless disregard of plaintiff Walker's rights.

199.    Plaintiff Walker has suffered injuries as a result of defendants' conduct.

## COUNT X
### Section 1983 Claim for Retaliation

200.    Plaintiff realleges and incorporates by reference Paragraphs 1-199 of the First Amended Complaint.

201.    Pursuant to 42 U.S.C. §§ 1983 and 1988, based on the Fourteenth and First Amendments, plaintiff Walker has a right to seek legal redress of grievances.

202.    By complaining about previous beatings he received, guard misconduct, and other conditions of his confinement, plaintiff was engaged in an activity protected by the First and Fourteenth Amendments.

203.    By administering further beatings, harassing plaintiff, "shaking down" his cell, and otherwise retaliating for plaintiff's complaints and grievances, the Individual Defendants and other CCDOC personnel caused plaintiff to suffer injuries that would likely chill a person of ordinary firmness from continuing to engage in constitutionally protected activities.

204.    Retaliation against plaintiff for exercising his constitutional rights was a substantial or motivating factor underlying the Individual Defendants' and other CCDOC personnel's conduct.  The Individual Defendants and other CCDOC personnel have violated plaintiff's rights under the First and Fourteenth Amendments.

205.    Retaliation by CCDOC personnel within the CCJ is a result of the Sheriff's Office's and Cook County's systematic failure to train, monitor, supervise, investigate and discipline CCDOC personnel, inadequate policies, and systematic failures to enforce policies.

206.    The persistent and widespread use of retaliation by CCDOC personnel constitutes a custom and practice, of which defendants Cook County and Sheahan have actual and constructive notice.

207.    Defendants Cook County and Sheahan have been deliberately indifferent in failing to remedy the problem. Through their indifference and failure to act, defendants Sheahan and Cook County have condoned and encouraged the continued use retaliation in the CCJ.

208.    Defendants' conduct was willful, wanton, malicious and in reckless disregard of plaintiff Walker's rights.

209.    Plaintiff Walker has suffered injuries as a result of defendants' conduct.

**COUNT XI**
**Statutory Indemnification**
**(Against Cook County)**

210.    Plaintiff realleges and incorporates by reference Paragraphs 1-209 of the First Amended Complaint.

211.    Pursuant to 745 ILCS 10/9-102 and 55 ILCS 5/46-3 and 5-1106, defendant Cook County is empowered and directed to pay any tort judgment for compensatory damages (and any associated attorneys' fees and costs) for which an independently elected Cook County officer, such as defendant Sheahan or his deputies acting within the scope of their employment, is found liable.

212.    Defendant Cook County is liable for any judgment entered against defendant Sheahan or the Individual Defendants for compensatory damages and for associated attorneys' fees and costs.

213.    In the event a judgment for compensatory damages is entered against defendant Sheahan or the Individual Defendants, Defendant County of Cook is liable to pay that judgment, as well as the associated attorneys' fees and costs.

**REQUEST FOR RELIEF**

WHEREFORE, plaintiff Walker requests that this Court:

A.    order, pursuant to Rules 23(c)(1) and 23(b)(2) of the Federal Rules of Civil Procedure, that this cause be certified and maintained as a class action;

B.    declare that class members' First and Fourteenth Amendment rights were violated through defendants' custom, pattern or practice of the use of excessive force, retaliation, and deliberate indifference toward class members' safety;

C.    issue an injunction ordering defendants Cook County and Sheahan to institute, carry out and enforce policies, practices and programs within CCDOC to (i) prevent the use of excessive force by CCDOC personnel against CCJ detainees; (ii) prevent the instigation of attacks against detainees; (iii) protect detainees from physical attacks and assaults; and (iv) prevent retaliation against detainees for engaging in protected activities;

D.    issue an injunction ordering defendants Cook County and Sheahan to provide notice to detainees of any declaratory and/or injunctive relief ordered as a result of this lawsuit;

E.    issue an injunction ordering defendants Cook County and Sheahan to conduct appropriate record keeping and reporting of excessive force incidents;

F.    appoint a Special Master or Monitor, who is not currently affiliated in any way with the Sheriff's Office, CCJ, CCDOC or Cook County, to monitor this Court's

orders, to protect the rights of class members, and to take steps necessary to ensure compliance with this Court's orders;

G.      award compensatory damages in an amount to be determined to plaintiff Walker for his individual injuries, jointly and severally against defendants;

H.      award punitive damages in an amount to be determined, jointly and severally against the defendants;

I.      order defendants to pay costs and reasonable attorneys' fees; and

J.      grant such other and further relief as this Court deems equitable, just and proper.

## JURY DEMAND

214.    Plaintiff demands a trial by jury.


Dated: February 13, 2006                     Respectfully submitted,


                                         /s/ W. Allen Woolley
                                   W. Allen Woolley, #6227238
                                   Jamenda A. McCoy, # 6281077
                                   Susan Campbell Caudell, #6285865
                                   Deanna N. Pihos, #6287097
                                   KIRKLAND & ELLIS LLP
                                   200 East Randolph Drive
                                   Chicago, IL  60601
                                   Tel:  312-861-2000
                                   Fax:  312-861-2200

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the <u>13th</u> day of <u>February, 2006</u>, I caused a true and correct copy of the foregoing ***First Amended Complaint*** to be filed electronically. I further certify that because no defendants were served with the original complaint in this matter, a true and correct copy of the foregoing will be served, with summons, upon defendants pursuant to Rule 4 of the Federal Rules of Civil Procedure.

/s/ Jamenda A. McCoy_____